IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RICHARD L. MCGOWAN, LTD., INC.,
    Plaintiff,

v.

SOY BASICS, LLC,
    Defendant.

Case No. 2:05-CV-405
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

This matter is before the Court for consideration of the Plaintiff's Motion for Default Judgment and Motion to Strike (Doc. #7) and the Defendant's Motion to Transfer Venue or, alternatively, to Dismiss for Improper Venue (Doc. #9). For the reasons that follow, the Plaintiff's motion is denied and the Defendant's motion to transfer venue is granted.

### I.

Plaintiff, Richard L. McGowan, Ltd., Inc. ["Plaintiff"], an Ohio company, brings this action against Soy Basics, LLC, of Iowa, alleging breach of contract with respect to sales commissions. Plaintiff served as an Independent Sales Representative of Defendant beginning in November 2001[1]. In addition to the contract claim, Plaintiff alleges unjust enrichment, violation of R.C. § 1335.11, and tortious interference with contract. This case was originally filed in the Court of Common Pleas for Franklin County, Ohio and was removed to this Court on the basis of

---

[1] According to the Defendant, the Plaintiff was terminated for cause on or about October 26, 2004. (*Motion to Transfer Venue* at 2).

diversity jurisdiction. 28 U.S.C. §§ 1332, 1446.

Defendant is in the business of marketing private label and other lines of candle products in the United States and internationally. Plaintiff worked as an Independent Sales Representative to solicit orders for products marketed by the Defendant. Plaintiff claims that his working relationship with Defendant was governed by an Agreement dated November 19, 2001, attached as Exhibit A to the *Complaint*. This Agreement provides that the sole and exclusive means of compensation is "commissions of fifteen (15%) on sales of the Products shipped into the Representative's exclusive territory." (*Id.* at 4). The Agreement outlines a method for computing commissions and specifies how commissions "shall become earned and due to Representative . . . ." (*Id.*).

According to the Defendant, the November 2001 Agreement was superseded by an Agreement entered into on August 12, 2004[2]. This agreement, signed by Plaintiff Richard L. McGowan, recites that it "supersedes any prior agreement between the Company and Representative and constitutes the entire agreement between the parties." (Exhibit at ¶ 12.1 attached to *Affidavit of Jon Nicolaisen*). The August 12, 2004 Agreement also contains a forum selection clause and choice of law provision.

> This Agreement shall be governed by and construed in accordance with the laws of the State of Iowa (except those pertaining to "conflict of laws") and any dispute arising hereunder shall be subject to the exclusive jurisdiction of the state and federal courts of and located within Chickasaw County, Iowa or such other court proximate thereto as Company may select. The parties irrevocably submit to the personal jurisdiction of such courts and waive all objections to any said venue.

---

[2]Defendant points out that the contract attached to the Complaint is missing three pages, contains several handwritten notes with no initials and includes deletions and comments that were not initialed. Defendant contends that it has no copy of this purported contract in its file and has no knowledge whether it was ever signed. (*Motion to Transfer Venue or to Dismiss* at 3).

(*Id.*).

Nevertheless, Plaintiff alleges in the Complaint that it performed all duties and obligations required but did not "get paid its fifteen percent (15%) commission for sales in 2004." (*Complaint* at ¶ 8). Plaintiff alleges that its 2004 sales were $126,325.22 and that it is owed $18,948.78 in commissions. (*Id.* at ¶ 10). Plaintiff claims breach of contract and unjust enrichment based on this amount. Plaintiff also claims that Defendant's alleged failure to pay commissions constitutes bad faith and is in violation of R.C. § 1335.11. Plaintiff seeks three times the sum alleged owed, or $56,846.34, for this alleged violation. (*Id.* at ¶ 21).

Finally, Plaintiff claims that the Defendant tortiously interfered with a contractual relationship between Plaintiff and a Sales Representative, Jennifer Fennerwald, whom Plaintiff hired to work in the State of Indiana. Plaintiff states that Ms. Fennerwald sold $161,357.00 of Defendant's goods from September 2003 to September 2004. Plaintiff claims that the Defendant enticed Ms. Fennerwald "with money and perks to work for the Chicago representative of the Defendant's company." (*Id.* at ¶ 26). Ms. Fennerwald took this position sometime in September 2004. (*Id.* at ¶ 27). Plaintiff seeks $21,768.57 in compensatory damages and in excess of $25,000 in punitive damages on this claim. Plaintiff also seeks an award of attorney's fees.

This action was filed in state court on March 17, 2005 and was removed to this Court on April 25, 2005. On April 28, 2005, Defendant filed a Motion for Extension of Time to move or plead in response to Plaintiff's claims. Defendant requested until May 9, 2005. (Doc. #4). The motion was granted on May 3, 2005. (Doc. #5). On May 5, 2005, Plaintiff filed a Motion for Default Judgment and Motion to Strike, arguing that the time for filing an Answer had passed

3

and that Defendant's Motion for Extension of Time was deficient. On May 9, 2005 Defendant filed an Answer (Doc. #8) and a Motion to Transfer Venue or to Dismiss for Improper Venue. (Doc. #9). These matters are currently before the Court for review.

## II.

### A. Plaintiff's Motion for Default Judgment and Motion to Strike

In moving for Default Judgment, Plaintiff argues that the Defendant should have filed an Answer sometime in April 2005, after being served with the state court action[3]. Plaintiff takes issue with Defendant's filing of a Motion for Extension of Time to move or plead to this action and moves to strike the same on the basis that Defendant failed to include a memorandum in support of the motion, as contemplated by S.D. Ohio Local Rule 7.2(a)(1). In response, Defendant argues that it articulated the reasons for its motion to extend the response time in the motion itself and, therefore, a separate memorandum was not necessary. In addition, Defendant argues that it relied on the Court's Order granting the extension of time to move or plead and therefore should not be held to be in default in this action.

The Court first finds the Plaintiff's Motion to Strike to be without merit. Although Defendant's Motion for Extension of Time to move or plead did not comply with the technical requirement of Local Rule 7.2(a)(1)[4], in that it was not accompanied by a memorandum, the

---

[3]Defendant was served with a Summons and copy of the Complaint on March 28, 2005. (*Notice of Removal* at ¶ 2).

[4]The rule states, in pertinent part, that "[a]ll Motions and applications tendered for filing shall be accompanied by a memorandum in support thereof which shall be a brief statement of the grounds, with citation of authorities relied upon . . . S.D. Ohio Local Rule 7.2(a)(1).

4

Court finds that striking the motion is too drastic a sanction. As Defendant points out, the grounds for the motion were stated in the motion itself, making the Court aware of the reason for the requested extension of time. The Court reminds Defendant to comply with Rule 7.2(a)(1) in the future, but otherwise declines to strike the Defendant's motion.

With respect to the Plaintiff's Motion for Default Judgment, the Court first notes that since this action was removed prior to Defendant's filing of an Answer, the time for response is calculated in the following way:

> In a removed action in which the defendant has not answered, the defendant shall answer or present the other defenses or objections available under these rules within 20 days after the receipt through service or otherwise of a copy of the initial pleading setting forth the claim for relief upon which the action or proceeding is based, or within 20 days after service of summons upon such initial pleading, then filed, or within 5 days after the filing of the petition for removal, whichever period is longest. . . .

Fed. R. Civ. P. 81(c).

In this case, the longest period would be five days after the filing of the petition for removal. On the third day after removal, Defendant filed its Motion for Extension of Time to move or plead. The motion was granted and the Defendant filed an Answer and a Motion to Transfer Venue or to Dismiss within the time allowed by the Court.

In view of this chronology, the Defendant is not in default. Thus, Default Judgment is not at all appropriate. The Plaintiff's motion is without merit.

**B. Defendant's Motion to Transfer Venue or, Alternatively, to Dismiss for Improper Venue**

Defendant moves to transfer this case, pursuant to 28 U.S.C. § 1404(a), to a federal

district court in Iowa. In the alternative, Defendant moves for dismissal of this action, pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a), on the basis of improper venue.

With respect to procedure, this Court finds that transfer, rather than dismissal, is the appropriate means for requesting the relief sought. In *Kerobo v. Southwestern Clean Fuels Corp.*, 285 F.3d 531 (6th Cir. 2002), the Sixth Circuit held that when a case is properly removed from state to federal court under 28 U.S.C. § 1441(a), and a change in venue is thereafter sought to enforce a forum selection clause, venue is not "improper" in the federal court so as to warrant dismissal of the action under Rule 12(b)(3). The appropriate means for relief is to request a transfer of venue under 28 U.S.C. § 1404(a). In accordance with Sixth Circuit law, this Court therefore considers Defendant's motion under § 1404(a) and ignores the Defendant's alternative request for dismissal.

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The Defendant argues that both private and public interests weigh in favor of transferring this case to a district court in Iowa. With respect to private interest, the Defendant argues for enforcement of the forum selection clause since it is included in the contract negotiated by the parties. Defendant further argues that the public interest would be served by enforcing the clause. To the extent R.C. § 1335.11 disfavors another forum, the Defendant urges this Court to find the Ohio statute unconstitutional.

In response, the Plaintiff argues that the forum selection clause contains an "exception" for "conflict of laws." According to Plaintiff, there is a conflict in this case because under Ohio law, R.C. § 1335.11, Plaintiff could allegedly recover treble damages for nonpayment of

6

commissions. Plaintiff argues that the same is not true under Iowa law. Thus, Plaintiff contends that "the case *sub judice* is obviously a 'conflict-of-law' case, and therefore, is specifically excepted from the choice of law clause in the second contract, by its own terms." (*Memorandum contra* at 4). Plaintiff also accuses the Defendant of forum-shopping[5].

In the Court's view, Plaintiff misconstrues the provision for conflict of laws contained at ¶ 12.1 of the August 2004 Agreement. A federal court sitting in diversity applies the law of the state in which it sits to any procedural issue not covered by federal law. *Hanna v. Plumer*, 380 U.S. 460, 470 (1965). The Court reads ¶ 12.1 to mean that with the action pending in this Court, Ohio law applies to any procedural issue not covered by federal law. The substance of the Agreement is governed by Iowa law. Plaintiff's assertion that "conflict of laws" pertains to the alleged differences in Ohio and Iowa law with respect to the substance of Plaintiff's claim, is misplaced. Contrary to Plaintiff's assertion, the conflict of law provision does not impact the venue analysis.

With respect to Defendant's request for transfer of venue, the Court must weigh certain case-specific factors in order to determine whether a transfer is more convenient and fair. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). In particular, the Court is to consider "the private interests of the parties, including their convenience and the convenience of the potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (citations omitted). The presence of a forum selection

---

[5]In addition, Plaintiff takes issue with Defendant signing the contract after Plaintiff and allegedly not forwarding a copy to Plaintiff until after his termination. The effect of these issues, if any, have no bearing on whether Ohio or Iowa is an appropriate forum for the present dispute.

clause is a significant factor in the analysis, but it is not dispositive. *Ricoh Corp.*, 487 U.S. at 32; *Kerobo*, 285 F.3d at 537. In addition, "a district court does not have the discretion to hold that because the state public policy prohibits the enforcement of [forum selection] clauses requiring an out-of-state venue, the state policy will be upheld and the clause will not be enforced." *Kerobo*, 285 F.3d at 538, citing *Ricoh*, 487 U.S. at 30-31.

In this case, the forum selection clause designates Iowa as the venue for any dispute arising under the Agreement. In considering the private interests of the parties, the Court is inclined to give deference to the forum designated in the Agreement. With respect to public interests, Defendant notes that Ohio law ,R.C. § 1335.11(F)[6], purports to void any contract that designates an out-of-state forum for disputes such as the one at bar. Defendant urges the Court to find that the statute violates the Commerce Clause of the United States Constitution, Article I, § 8[7]. Defendant represents that it has served the Ohio Attorney General with the motion before this Court in view of the challenge to the constitutionality of the Ohio statute. This Court's docket reflects no response from the Ohio Attorney General regarding the Defendant's position.

In the Court's view, the constitutionality of R.C. § 1335.11(F) need not be addressed. In

---

[6] The statute provides that
[a]ny provision in a contract between a sales representative and principal is void if it purports to . . .
(2) Make the contract subject to the laws of another state;
(3) Limit the right of the sales representative to initiate litigation or alternative dispute resolution in this state.

R.C. § 1335.11(F)(2),(3).

[7] The Commerce Clause provides that "Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes . . . ." U.S. CONST. Art. I, § 8.

*Kerobo*, the Sixth Circuit held that state policy disfavoring an out of state forum does not necessarily preclude a federal court from enforcing a forum selection clause[8]. "[W]hen considering a forum-selection clause as a factor [in the § 1404(a) venue analysis], a district court does not have the discretion to hold that because the state public policy prohibits the enforcement of clauses requiring an out-of-state venue, the state policy will be categorically upheld and the clause will not be enforced." *Kerobo*, 285 F.3d at 538, citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. at 30-31. Thus, in the Court's view, the policy expressed in R.C. § 1335.11(F) is not dispositive of the venue issue. Furthermore, the Court notes that Plaintiff does not even invoke the Ohio statute in opposing the transfer of venue in this case[9].

This Court finds that, irrespective of the policy expressed in § 1335.11(F), the private and public interests weigh in favor of transferring this case. The Plaintiff is an Ohio entity and the Defendant is an Iowa corporate entity. No matter which forum is chosen, one side will bear the burden of traveling. In considering these facts, together with the parties' choice of Iowa as a forum for resolving any dispute under the Agreement, the Court finds that a transfer of this action is in the interests of justice. Accordingly, this action shall be transferred in accordance with 28

---

[8] The Court notes that an earlier verison of the statute was held unconstitutional in *Johnson, MacDonald & Assoc. v. Webster Plastics*, 856 F.Supp. 1249 (S.D. Ohio 1994) (Merz, M.J.). While the statute has been revised, this Court declines to consider the new statute's constitutionality on the basis that it unnecessary to resolve the instant dispute.

[9] Plaintiff fails to advance any argument in response to Defendant's constitutional challenge. According to Plaintiff, the issue is "moot" because of the exception for "choice of law" contained in the forum selection clause of the Agreement. For the reasons explained above, Plaintiff's position is misplaced.

9

U.S.C. § 1404(a)[10].

### III.

In light of the foregoing, the Plaintiff's Motion for Default Judgment and to Strike (**Doc. #7**) is **DENIED**. The Defendant's Motion to Transfer Venue (**Doc. #9**) is **GRANTED**.

Pursuant to 28 U.S.C. § 1404(a), the Clerk is **DIRECTED** to **TRANSFER** this action to the United States District Court for the Northern District of Iowa , Eastern Division for all further proceedings. The case shall be **CLOSED** in this Court.

**IT IS SO ORDERED.**

9-5-2006
DATE

EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT JUDGE**

---

[10] In the Court's view, if the balance of factors to be considered under § 1404(a) weighed more heavily in favor of Ohio as a forum, then the Court would be concerned about the constitutionality of R.C. § 1335.11(F).

10